## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHER DISTRICT OF TEXAS

| | |
|---|---|
| SANJAY BHATT,             ) | |
|          ) | |
|      Plaintiff,        ) | |
|          ) | |
|      v.            ) | Civil Action No. |
|          ) | |
| TPUSA-FHCS INC., dba    ) | |
| TELEPERFORMANCE USA;   ) | JURY TRIAL DEMANDED |
| and ALEXANDER URMERSBACH   ) | |
|          ) | |
|      Defendant      ) | |
|          ) | |
| _____ ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Sanjay Bhatt, by and through counsel, and files this, his Complaint against the Defendants, TELEPERFORMANCE U.S.A FHCS, INC ("TPUSA) and Alexander Urmersbach, and would show unto the Honorable Court as follows:

## THE PARTIES

1. Plaintiff, Sanjay Bhatt, is a citizen of Dallas, Texas, and former employee of Defendant, TPUSA-FHCS Inc.,

2. Defendant, TPUSA-FHCS Inc., Inc. dba Teleperformance USA, is a foreign corporation registered in Utah. Its primary division is operating contact centers which provide telephone-based customer service to customers of Defendants' business entities.

3.     Defendant, Alexander Urmersbach is the CFO of Teleperformance USA and upon information and belief, is a citizen of Salt Lake City, Utah.

## VENUE AND JURISDICTION

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § § 1331, and 1343, for the violation of Plaintiff's federal statutory rights and for violation of Plaintiff's civil rights under 42 U.S.C. § 1981.  This Court has supplemental jurisdiction over the state claims herein under 28 U.S.C. § 1367.

5.     Venue is properly established before the Court pursuant to 28 U.S.C. § 1391 as the Defendants are located in, and the Plaintiff's claims occurred or accrued in, Dallas, Texas which is in this District.

## FACTS

6.     Plaintiff incorporates by reference, as set forth herein, the allegations set forth in each preceding paragraph and further alleges as follows:

7.     Plaintiff, an Indian male, moved from India and initially worked for Aegis, a company that was acquired by defendant TPUSA-FHCS, INC.   Once Aegis was acquired by TPUSA, he and other Indians feared for their job security.  Unlike Aegis, a company that employed several Indian individuals in senior positions, Plaintiff and others witnessed a different culture at TPUSA.  In fact, during the course of Plaintiff's eleven year tenure with both companies, these individuals witnessed the disproportionate terminations of minorities at TPUSA.

8.     Due to the targeting of minorities at TPUSA, and Plaintiff's additional

exposure to the same based on his role as a senior manager, Plaintiff repeatedly sought confirmation from his supervisors regarding his status with the company as well as his compensation up until his termination on or about April 2020.

9.      On or about April 2020, Plaintiff was terminated allegedly pursuant to a reduction in force in contravention of prior misrepresentations by management ex-CFO Dean Duncan and new CFO Alexander Urmersbach who had misrepresented both the terms of his employment and also details regarding his compensation.

10.      Based on the conduct of the management prior to and after his termination, and the previous actions by Defendants, it became clear to Plaintiff that he too had been misled and targeted (with respect to his compensation and employment) due to his race and national origin.

## COUNT I
### Race Discrimination Based on 42. U.S.C. § 1981

11.      Plaintiff incorporates by reference the factual allegations set forth in preceding paragraphs, and asserts violation of 42 U.S.C. § 1981 against each Defendant and further allege as follows:

12.      Plaintiff is a member of a protected class, namely he is an Indian male who was operating on a visa during his employment.

13.      At all times relevant, Plaintiff was in a contractual relationship with TPUSA and both it and defendant Alexander Urmersbach purposefully discriminated against him because of his race and national origin.

14.     Contained within the Diversity & Inclusion Policy, Plaintiff was protected *via* contract form discrimination through policies and practices with respect to compensation, terms or conditions of employment because of an individual's race, color, ethnic, or national origin, religion, gender, height, weight, age, marital status, political beliefs disability, or handicap which does not impair an individual's ability to perform adequately in that individual's particular position or activity.  TPUSA and Alexander Urmersbach interfered with this provision with respect to Plaintiff as he was misled regarding the terms of his employment, the status of his employment, and his compensation based on his race and national origin.  Unlike his Caucasian peers, who were members of the "core group", Plaintiff was unduly targeted and his employment ended in April 2020. Making matters worse, Plaintiff was more qualified and there were was no basis for his departure given the representations of TPUSA and Alex Urmersbach.  In addition, Alex Urmersbach repeatedly misrepresented the terms of his compensation, unlike his Caucasian peers, and the handling of his separation offers were distinctly handled as well. This discriminatory approach negatively affected Plaintiff's benefits, privileges, and conditions of his employment.

15.     To be clear, during the course of Plaintiff's employment with Defendant TPUSA, Plaintiff did not enjoy the same benefits, privileges, terms, and conditions of employment as did Caucasian employees.

16      As such, during the course of Plaintiff's employment, Defendants violated Plaintiff's rights by depriving Plaintiff of his right to the enjoyment of all benefits,

privileges, terms, and conditions of Plaintiff's employment contract as is enjoyed by Caucasian employees, in violation of 42 U.S.C. § 1981(b).

17.     Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1981, 42 U.S.C. and 42 U.S.C. § 1988.

**COUNT II**
**TPUSA's Breach of TPUSA's policies and Procedures**

18.     Plaintiff readopts and reasserts all allegations set forth in the preceding paragraphs and asserts the following against TPUSA

19.     TPUSA, furnishes all of its employees an agreement was with respect to policies and procedures,  including diversity & inclusion.  This policy sets forth specific procedures and terms to be followed by Defendants in regards to, among others, employment decisions and the terms and conditions of employment.

20.  TPUSA, owed a Plaintiff a duty to comply with its own policies and procedures specifically provided for in this handbook.   TPUSA failed to comply with its own policies, however.

21.     Contained within this contract, TPUSA, was protected via contract form discrimination through policies and practices with respect to compensation, terms or conditions of employment because of an individual's race, color, ethnic, or national origin, religion, gender, height, weight, age, marital status, political beliefs disability, or handicap which does not impair an individual's ability to perform adequately in that individual's particular position or activity.  TPUSA further violated this provision when it failed to

compensate Plaintiff when compared to similarly situated individuals of a different race and terminated Plaintiff due to his race/national origin.

22.     Defendants' failure to follow the specific terms of TPUSA employee manual as well as the termination of Plaintiff in contravention of its own policies renders them liable to Plaintiff for breach of contract.   Furthermore, TPUSA and Defendant Alexander Urmersbach approached the separation of Plaintiff distinctly and ultimately deprived him of the offers made to his peers based on misleading conduct.

23.     Defendants' breaches caused Plaintiffs lost wages and benefits, attorneys' fees, mental distress and emotional anguish and other damages.

## COUNT III
### Tortious Interference with prospective business advantage.

24.     Plaintiff had a reasonable expectation of entering into a valid business relationship with third party employers in 2019 and 2020.

25.     Defendant Alexander Urmersbach knew of Plaintiff's expectancy as he repeatedly made representations to retain Plaintiff during his tenure as CFO up to and including April 2020 in order to prevent this.  For example, as recently as 2019 and prior to Plaintiff's termination in 2020, Urmersbach assured Plaintiff that "he is part of his core team" and echoed the representations of his prior CFO, that "he would be the last to go." Urmersbach made these verbal representations to Plaintiff while he was working in Dallas and constantly reminded Plaintiff that he was a member of his "core group" such that Plaintiff would not be subject to the approach the company took with respect to the terminations of his coworkers.   Throughout this time, Urmersbach assured that he would

be the last in his position to be terminated.  Although these statements were intended to interfere with Plaintiff's outside employment opportunities, Plaintiff was not the last rather he was among the first in a small group of "laid off" employees.  Urmersbach never had any intention of honoring his promises, and it became even more apparent once Urmersbach belatedly tried to misrepresent that he didn't have the ability to retain Plaintiff during the separation in April 2020.  Due to Plaintiff's senior status, he was well-aware that Urmersbach did in fact have decision making authority but elected not to retain Plaintiff and never had the intention of doing so.  Based on the additional reasons offered by Urmersbach, it was clear to Plaintiff that he was untruthful with respect to his evaluations of Plaintiff leading up to his termination in order to retain the services of Plaintiff.

26.     In sum, Plaintiff was well qualified to work for different suitors and based on the timing and nature of his opportunities, Plaintiff enjoyed a reasonable probability to do so.  However, Defendant Alexander Urmersbach was well aware that as long as Plaintiff was assured a heightened level of job security, he would not take advantage of his other opportunities.  Therefore, Urmersbach interfered by making false and misleading reports to Plaintiff regarding his job security throughout his tenure up to and including April 2020.

27.     Plaintiff suffered damages resulting from such interference, including suffering lost wages through unemployment.

## **DAMAGES**

28.     Plaintiff reincorporates all of the preceding paragraphs by reference.

29.     Plaintiff is entitled to an award of attorney's fees and costs, as pursuant to 42 U.S.C. § 1981, § 1988, Texas Civil Practice and Remedies Code Section 38.001 and the following categories of damages:

(a)     Past and future lost wages and benefits, including back pay, fringe benefits, and other economic damages;

(b)     Mental anguish and emotional distress;

(c)     Damages to Plaintiff's personal reputation, pain and suffering, humiliation and embarrassment;

(d)     Actual and compensatory damages;

(e)     Incidental and consequential damages;

(f)     Punitive damages;

(g)     Interest damages as allowed by law;

(j)     Award such other relief to which Plaintiff may be entitled under law and in equity

WHEREFORE PREMISES CONSIDERED, Plaintiff, Sanjay Bhatt respectfully moves this Honorable Court for a trial by jury and to enter judgment in favor of Plaintiff against Defendants in an amount as may be determined by the jury to fully compensate Plaintiff for all actual and punitive damages, plus pre-and post-judgment interest,

attorneys' fees and all costs incurred in filing and prosecuting the subject action, and for such other and further relief as the Court deems just and proper.

Respectfully submitted this the 27th day of January, 2022

/s/ Volney Brand
Brand Law PLLC
3626 N Hall Suite 610
Dallas, Tx 75219
Volney1@brandlaw.us.com
Telephone: 214-932-1472
Fax: 214-932-1473